**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————————

**JAI C. SINGH,**

                    Plaintiff,

          - against –

**NEW YORK CITY OFF-TRACK BETTING CORP.,**

                    Defendant.
————————————————————————————————


**03 Civ. 5238 (JGK)**

**OPINION & ORDER**


**JOHN G. KOELTL, District Judge:**

     The plaintiff, Jai C. Singh ("Singh"), an employee of the
New York City Off-Track Betting Corporation ("OTB"), brings this
action against the OTB alleging that the OTB discriminated
against him because of his race and national origin in violation
of Title VII of Civil Rights Act of 1964, 42 U.S.C. 2000e-1 <u>et
seq.</u> ("Title VII").  Specifically, the plaintiff alleges that the
defendant denied him a promotion because of his race and national
origin, that the defendant subjected him to a hostile work
environment because of his race and national origin, and that the
plaintiff faced retaliation because he complained about this
discrimination.  The defendant now moves pursuant to Federal Rule
of Civil Procedure 56 for summary judgment dismissing all claims

against him.  For the reasons stated below, the motion is granted
and the plaintiff's claims are dismissed.

I.

**The standard for granting summary judgment is well
established.  Summary judgment may not be granted unless "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c)**; see also Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd.
P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving
party bears the initial burden of informing the district court of
the basis for its motion and identifying the matter that it
believes demonstrates the absence of a genuine issue of material
fact.  Celotex, 477 U.S. at 323.  The substantive law governing
the case will identify those facts that are material and "only
disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Consol. Edison, Inc. v. Northeast Utilities</u>, 332 F.Supp.2d 639, 642 (S.D.N.Y. 2004).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. <u>See</u> <u>Cleveland v. Policy Mgt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999); <u>Celotex</u>, 477 U.S at 322; <u>Powell v. Nat. Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also</u> <u>Gallo</u>, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. <u>See</u> <u>Chambers v. T.R.M. Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may

not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993); <u>see also</u> <u>Scotto v. Almenas</u>, 143 F.3d 105, 114-15 (2d Cir. 1998); <u>Consol. Edison</u>, 332 F.Supp.2d at 643.


                                II.

        The following facts are undisputed unless otherwise noted.

        The plaintiff has worked at the OTB since June 10, 1974. (Defendant's Local Rule 56.1 Statement of Undisputed Facts ("Def's 56.1") ¶ 1; Plaintiff's Statement of Material Controverted Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶1.) On or about June 10, 1975, the plaintiff was promoted from a Cashier trainee to a Cashier, and was given a corresponding pay increase. (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.)  On or about July 15, 1976, the plaintiff was promoted from a Cashier to a Racing Data Coordinator Trainee with the corresponding pay increase and, on or about August 25, 1978, the plaintiff was promoted to a Racing Data Coordinator and given the corresponding pay increase.  (Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.)  On or about October 1, 1979, the plaintiff was promoted from a Racing Data Coordinator to a Communications Specialist Trainee in the Voice Broadcast Department with the corresponding pay increase.  (Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.)  On or about December 31, 1979 the plaintiff was

reclassified and promoted to a Voice Broadcast Specialist
Trainee.  (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)  On or about July 10,
1980, the plaintiff was promoted to Voice Broadcast Specialist
("VBS").  (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.)

In February 1982 the plaintiff was promoted to VBS Level II,
his current position, with the corresponding pay increase.  (Def.
56.1 ¶ 6; Pl. 56.1 ¶ 6.)  This position initially required the
plaintiff to announce information on horse races, which was
broadcast to OTB branches.  (Transcript of April 22, 2004
Deposition of Jai C. Singh ("Singh Dep.") at 27-28, attached at
Ex. A to Defendant's Notice of Motion for Summary Judgment ("Def.
Mot.").)  Between 1982 and the present, the plaintiff's
responsibilities were changed.  The plaintiff is no longer
required to announce information on races because the races are
now televised.  (Id. at 28-29.)  The plaintiff's duties were
primarily to monitor the television broadcast, which can show up
to four tracks on one screen at one time, and to ensure that the
correct track was shown on the full screen when a race was in
progress.  (Id.)

On September 2, 1992, the plaintiff was reprimanded for
failing to perform his duties as an emergency back-up for the OTB
Results Line Studio on August 31, 1992.  (Def. Mot., Ex. G.)  The
reprimand was issued despite the plaintiff's objection that the
plaintiff had not been adequately trained with the appropriate

equipment or procedures, because the plaintiff's supervisor claimed that the plaintiff had been properly trained.  (<u>Id.</u>)  The reprimand did not result in a suspension or loss of pay, but could be used against the plaintiff in consideration of punishment to be imposed in any subsequent disciplinary proceeding.  (<u>Id.</u>)

 The plaintiff alleges that, since in or about 1998, he has been performing all of the duties of a Supervising Voice Broadcast Specialist ("SVBS"), in cooperation with Mike Coyne ("Coyne"), who was employed at the OTB as an SVBS until his retirement in October 2002.  (Affidavit of Jai C. Singh in Opposition to Defendant's Motion for Summary Judgment, sworn to Oct. 12, 2004 ("Singh Aff.") ¶ 4-6.)  The plaintiff alleges that, from December 2001 until Coyne's retirement, he alone performed the SVBS duties during the three days out of each week that Coyne was not working.  (<u>Id.</u> ¶ 5.)  The plaintiff also alleges that, until recently, his shifts were scheduled in a "two days on, two days off," manner in accordance with the scheduling of supervisors' shifts.  (<u>Id.</u> ¶ 11.)  The plaintiff alleges that he continues to perform the responsibilities of an SVBS despite the fact that he has never been given a salary corresponding to the SVBS position.  (<u>Id.</u> ¶ 4.)

 The plaintiff expressed a desire to be considered for the position of SVBS when Coyne retired in October 2002.  (<u>Id.</u> ¶ 6.)

6

The plaintiff alleges that he was assured by William Radice ("Radice"), Director of Engineering at the OTB, that the plaintiff was the obvious choice for the position. (Id.; Pl. 56.1 ¶ 67.) The plaintiff alleges that, when the plaintiff had not been given the position within a few weeks after Coyne's retirement, he told Radice that he was going to file a grievance. (Singh Aff. ¶ 8.) The plaintiff alleges that Radice convinced him not to file a grievance and not to "ruffle the feathers," and assured the plaintiff that the SVBS position would be his. (Id.)

In late 2002, the plaintiff filed a grievance with the OTB alleging that the OTB was violating the contract between the OTB and the plaintiff's union because the plaintiff was "Working Out of Title," by performing tasks at a supervisory level. (See Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11; Letter from Ellin Hauser dated Feb. 25, 2003 ("Hauser Letter"), attached at Ex. H. to Def. Mot.) According to the plaintiff, he filed the grievance because he had not been given Coyne's former position despite the fact that he had been performing the same duties as Coyne and "had, de facto, held the SVBS position on a full time basis since around December 2001 despite not officially receiving the title or commensurate salary." (Singh Aff. ¶ 10; Singh Dep. at 49.) A hearing was held on December 10, 2002, which determined that further review was required. (See Hauser Letter.)

On or about February 18, 2003, Pat McDonnell-Riggio,
Executive Director of Human Resources, conducted a desk audit of
the plaintiff's position, which analyzed the plaintiff's
responsibilities and job functions and assessed the plaintiff's
technical and supervisory roles.  (See id.; Def. 56.1 ¶¶ 15-16;
Pl. 56.1 ¶ 15-16; Singh Aff. ¶ 9.)  McDonnell-Riggio determined
that the plaintiff was not performing out of title work.  (Def.
56.1 ¶ 17; Pl. 56.1 ¶ 17.)  She found that the plaintiff's only
supervisory role consisted of making up the schedule and the
plaintiff's job did not require him to supervise other VBSs.
(Def. 56.1 ¶ 17-18; Pl. 56.1 ¶ 17-18.)  Based on the audit report
and upon the review of Ellin Hauser, Senior Director of
Industrial Relations, the plaintiff's grievance was denied.
(Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19; Hauser Letter.)

The plaintiff alleges that he faced retaliation from his
supervisors as a result of his filing the grievance.  The
plaintiff alleges that after he filed his grievance, his shift
schedule was changed so that the plaintiff worked five days in a
row instead of his previous "two days on, two days off" schedule.
(Singh Aff. ¶ 11.)  On March 24, 2003, the plaintiff received a
written reprimand from Radice alleging that the plaintiff failed
to display a scheduled racetrack as listed on the simulcast
schedule the previous day.  (Def. Mot., Ex. I; Def. 56.1 ¶ 21;
Pl. 56.1 ¶ 21)

8

On April 1, 2003, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Pl. Aff. ¶ 18, Ex. D.) The complaint alleged that the OTB had discriminated against the plaintiff based on his race and his national origin by failing to promote him to the position of SVBS after Coyne's retirement. (Id.) The plaintiff is of Indian descent and was born in Guyana. (Id. ¶ 2.) The complaint also alleged that the plaintiff faced retaliation for his complaint about OTB's refusal to promote him in the form of written reprimands for incidents that were beyond his control and not his fault. (Pl. Aff., Ex. D.) On June 25, 2003, the EEOC issued a Dismissal and Notice of Rights. (Id., ¶¶ 19-20, Ex. E.) The plaintiff alleges that the EEOC advised him that the title of SVBS had been eliminated and that, prior to that date, he had never been told that the position was eliminated. (Id., ¶ 20.)

The defendant alleges that the position of SVBS was eliminated following Coyne's retirement, and that therefore no one was appointed to the position after Coyne retired. (Def. 56.1 ¶ 13-14.) The plaintiff disputes this and alleges that, although no one was appointed to the specific title of SVBS, the plaintiff continued to perform all the tasks of an SVBS without being given the commensurate compensation. (Pl. 56.1 ¶¶ 14, 42, 65.) The plaintiff also alleges that, while the OTB contends it eliminated the position, two caucasion men, Steven Baker and Drew

Berlin, received positions equal, in substance, to SVBS positions. (Singh Dep. at 60.) The defendant alleges, and the plaintiff does not dispute, that Baker and Berlin, who were employed in a different division of the OTB than the plaintiff, were promoted to the position Computer Associate III as a result of grievances that Baker and Berlin filed that demonstrated that they were working out of level. (Def. 56.1 ¶¶ 22-34; Pl. 56.1 ¶¶ 22-34.) The plaintiff alleges that, even though Baker and Berlin were not given the job title of SVBS, the effect of their promotions was the same as if they had been given the title of SVBS because they were promoted to the supervisor level and became the plaintiff's supervisor. (Singh Dep. at 60; Singh Aff. § 12.) The plaintiff also alleges that both Baker and Berlin were less qualified for the SVBS position than the plaintiff. (Singh Aff. ¶ 12.)

The plaintiff continued to receive disciplinary measures for incidents that he claims would not result in disciplinary measures for other similarly situated employees at the OTB. (Singh Aff. ¶ 16.) On or about October 16, 2003, the plaintiff received a disciplinary notice from Kevin Matthews, one of the plaintiff's supervisors, for failing to keep the door to the Audio/Visual Studio open on October 15, 2003, and October 16, 2003, in violation of the OTB Uniform Rules of Discipline. (Def. 56.1 ¶¶ 43, 44; Pl. 56.1 §§ 43, 44) The plaintiff disputes that

he had been given prior warning that the door must remain open. (Pl. 56.1 ¶ 43.)  On November 18, 2003, an informal conference was held regarding the October 16, 2003, charges.  (Def. 56.1 ¶ 47; Pl. 56.1 ¶ 47.)  As a result of this conference, Hauser, who led the conference, recommended a written reprimand be issued to the plaintiff.  (Def. 56.1 ¶ 47; Pl. 56.1 ¶ 47; Def. Mot. Exs. Q, S.)  On or about December 10, 2003, the plaintiff rejected this recommendation and chose to proceed with a hearing pursuant to New York Civil Service Law § 75 (the "Section 75 hearing"), which provides that certain civil service employees "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges…."  (See N.Y. Civ. Serv. Law § 75 (2005); Def. Mot. Ex. Q.)

The plaintiff also faced three other charges throughout December 2003 and January 2004.  These charges alleged that: (1) on December 10, 2003, the plaintiff failed to perform his duties properly in the Audio/Visual Studio by failing to follow the Department's operation rules; (2) on the same date the plaintiff failed to perform his duties properly and was incompetent when he failed to show the Meadowlands race track as the primary track, and showed a different track instead; and (3) on January 17, 2004, the plaintiff failed to perform his duties by failing to follow instructions to discontinue an on-screen message displayed

to the in-home audience.  (See Def. 56.1 ¶¶ 49-51; Def. Mot. Exs. R, S.)  On February 5, 2004, an informal conference was held regarding these charges.  (Def. 56.1 ¶ 52; Pl. 56.1 ¶ 52; Def. Mot., Ex. R.)  On February 13, 2004, Neil Kaplan, who led the conference, dismissed the charge based on the January 17, 2004, incident and recommended that the plaintiff be found guilty of the other charges and that the plaintiff be given a two-day suspension.  (Def. 56.1 ¶ 52; Pl. 56.1 ¶ 52; Def. Mot., Ex. R; Singh Aff. ¶ 51.)  The plaintiff did not accept Kaplan's recommendation and chose to proceed with a Section 75 hearing. (Def. 56.1 ¶ 53; Pl. 56.1 ¶ 53; Def. Mot., Ex. R.)

On or about March 31, 2004, a hearing was held regarding the charges concerning the alleged incidents on October 15, 2003, October 16, 2003, and December 10, 2003.  (Def. 56.1 ¶ 54; Pl. 56.1 ¶ 54; Def. Mot., Ex. S.)  At the hearing, the plaintiff testified that he was being retaliated against by OTB.  (Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55; Def. Mot., Ex. S.)  Steven Sloan, who led the hearing, issued a Report and Recommendation to the President of OTB recommending that the plaintiff be found guilty of the charges against him based on the events of October 16, 2003, and December 10, 2003, and that the plaintiff be suspended without pay for three days. (Def. 56.1 ¶ 56-58; Pl. 56.1 ¶ 56-58; Def. Mot., Ex. S.)  Raymond V. Casey, President of the OTB,

accepted the Report and Recommendation on May 3, 2004.  (Def. 56.1 ¶ 59; Pl. 56.1 ¶ 59; Def. Mot., Exs. T, U.)

On July 16, 2003, the plaintiff commenced the present action.  On November 19, 2003, the plaintiff filed his amended complaint, which alleges that the OTB discriminated against him by failing to promote him and through "Harassment/Phantom Customer Complaints."  (Amended Complaint, filed Nov. 19, 2003 ("Amd. Compl."), attached at Ex. F. to Singh Aff.)


## III.

### A.

The defendant argues that, to the extent the plaintiff relies on events that took place before June 5, 2002, these claims are time-barred.  In New York, a Title VII claim is time barred if the plaintiff does not file a charge with the EEOC within 300 days after the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 108-113 (2002); Harris v. City of New York, 186 F.3d 243, 247 n.2 (2d Cir. 1999).  The Supreme Court has stated that "strict adherence" to this statute of limitations is required.  Morgan, 536 U.S. 101, 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).  The defendant argues that, because the plaintiff filed his charge of discrimination with the EEOC on April 1, 2003, claims based on incidents that occurred

before June 5, 2002, are time-barred because they accrued more than 300 days before the plaintiff filed his EEOC charge.

The plaintiff alleges that events that took place before June 5, 2002, are not time-barred because they were part of a continuing violation. The continuing violation exception allows the Court to consider events that took place outside the statute of limitations if they were part of a specific ongoing discriminatory practice, at least one incident of which fell within the statute of limitations. See Morgan, 536 U.S. at 122. The plaintiff argues that the defendant's failure to promote the plaintiff is part of the same continuing violation that includes acts that occurred before June 5, 2002, such as the plaintiff's taking on the additional responsibilities of an SVBS in December 2001.

However, in National Railroad Passenger Corp. v. Morgan, the Supreme Court made clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113. The Supreme Court specifically identified acts such as "termination, failure to promote, denial of transfer, or refusal to hire," as "discrete acts" that are not rendered timely simply because they are related to an act that occurred within the statute of limitations. Id. at 114. The plaintiff therefore cannot avail himself of the continuing violation exception for his employment

discrimination claim based on a failure to promote.  The
plaintiff's claim that his continuing employment as a VBS while
performing the tasks of a SVBS establishes one continuing
violation that includes his time of employment before June 5,
2002, is without merit because "[m]ere continuity of employment,
without more, is insufficient to prolong the life of a cause of
action for employment discrimination."  Id. at 112-13 (quoting
Delaware State College v. Ricks, 449 U.S. 250, 257 (1980)
(rejecting argument that, where plaintiff was denied tenure and
subsequently terminated over one year later, time period did not
begin to run until plaintiff's termination because denial of
tenure and termination were in effect one continuing violation)).


     In Morgan, the Supreme Court did note that hostile work
environment claims are different in kind from discrete acts
because their very nature depends on repeated conduct.  Morgan,
536 U.S. at 115.  Therefore, the Court concluded that "[p]rovided
that an act contributing to the claim occurs within the filing
period, the entire time period of the hostile environment may be
considered by a court for the purposes of determining liability."
Id. at 117.
     Therefore, the plaintiff's claims for employment
discrimination with the exception of his claim of hostile work

environment are time-barred to the extent that they are based on events that occurred before June 5, 2002.

## B.

### 1.

To establish a prima facie case for employment discrimination under Title VII, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See also St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 506 (1993); James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); see also Garvin v. Potter, No. 00 Civ. 6789, 2005 WL 957402, at *12 (S.D.N.Y. Apr. 25, 2005).  If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.  See McDonnell Douglas, 411 U.S. 792, 802-03; St. Mary's Honor Ctr., 609 U.S. at 506-07; James, 233 F.3d at 154.

After the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to

demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997); see also Darrell v. Consol. Edison Co. of New York, Inc., No. 01 Civ. 8130, 2004 WL 1117889, at *8 (S.D.N.Y. May 18, 2004). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see also Reeves v. Sanderson Plumbing Co., 530 U.S. 133, 143 (2000); Darrell, 2004 WL 1117889 at *8. The Court of Appeals for the Second Circuit has instructed that in determining whether the plaintiff has met this burden, a court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James, 233 F.3d at 156 (quoting Reeves, 530 U.S. at 148-49); see also Darrell, 2004 WL 1117889 at *8. Although summary judgment must be granted with caution in employment discrimination actions "where intent is genuinely in issue, ... summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers, 43 F.3d at 40; see also Darrell, 2004 WL

1117889 at *8; <u>Alston v. New York City Transit Auth.</u>, No. 02 Civ. 2400, 2003 WL 22871917, at *4-5 (S.D.N.Y. Dec. 3, 2003).

For the purposes of this motion, the defendant does not dispute that the plaintiff has established the first two elements of a prima facie case. The defendant argues, however, that, with the exceptions of the defendant's failure to promote the plaintiff and the three-day suspension issued by the defendant, the plaintiff cannot show that the plaintiff suffered an adverse action. Moreover, the defendant argues that the plaintiff cannot show that the defendant's failure to promote the plaintiff and the plaintiff's three-day suspension of the plaintiff occurred under circumstances giving rise to an inference of discrimination. The defendant also argues that, even if such circumstances existed, the defendant has provided legitimate, nondiscriminatory reasons for its decision not to promote the plaintiff and to issue the suspension, and the plaintiff has provided no evidence that these proffered reasons are pretexts for discrimination.

2.

The defendant argues that summary judgment should be granted dismissing the plaintiff's claims of employment discrimination based on the defendant's changing the plaintiff's schedule and

issuing written reprimands, because these actions do not constitute adverse employment actions.

To establish that an employer's conduct constituted an adverse employment action, a plaintiff must provide evidence that the conduct resulted in "a materially adverse change in the terms and conditions of employment." Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997). A materially adverse change must be "more disruptive than mere inconvenience or an alteration of job responsibilities," and can include, for example, "termination of employment, a demotion accompanied by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices… unique to a particular situation." Galabaya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted).

With the exception of the defendant's failure to promote the plaintiff and the plaintiff's three-day suspension, none of the actions the plaintiff challenges rise to the level of an adverse employment action. The written reprimands issued to the plaintiff did not result in suspension or any loss of wages, title, benefits, or responsibilities, or any other material change in the plaintiff's working conditions. See Weeks v. New York, 273, F.3d 76, 86 (2d Cir. 2001) (finding plaintiff's 'notice of discipline' did not create materially adverse change

in plaintiff's working conditions); <u>Valentine v. Standard and Poor's</u>, 50 F.Supp.2d 262, 283 (S.D.N.Y. 1999) (finding "[n]egative evaluations alone, without accompanying adverse result" did not constitute adverse employment action). Similarly, the change in the plaintiff's schedule from a "two days on, two days off" schedule to a five consecutive work day schedule did not constitute an adverse employment action because it had no material impact upon the conditions of the plaintiff's employment. <u>See</u> <u>Rivera v. Potter</u>, 03 Civ. 1991, 2005 WL 236490, at *5 n.5 (S.D.N.Y. Jan. 31, 2005) (finding unwanted schedule change did not constitute adverse employment action). The plaintiff's subjective perception that he was treated unfavorably is insufficient to demonstrate an adverse employment action. <u>See</u> <u>Garber v. New York City Police Dept.</u>, No. 95 Civ. 2516, 1997 WL 525396, at *6-7 (S.D.N.Y. Aug. 22, 1997) (finding plaintiff's purely subjective feelings did not negatively alter terms and conditions of employment), <u>aff'd</u>, 159 F.3d 1346 (2d Cir. 1998).


3.

The defendant argues that summary judgment should be granted dismissing the plaintiff's claim of employment discrimination based on the defendant's failure to promote.

To establish a prima facie case based on an alleged discriminatory failure to promote the plaintiff must demonstrate

that: 1) he is a member of a protected class; 2) he applied and
was qualified for a job for which the employer was seeking
applicants; 3) he was rejected for the position; and 4) the
position remained open and the employer continued to seek
applicants having the plaintiff's qualifications.  Brown v. Coach
Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) (citing McDonnell
Douglas, 411 U.S. at 802).  It is undisputed that the plaintiff
is a member of a protected class.  The plaintiff alleges that he
asked to be considered for the SVBS position, which he was told
would be available, that he was subsequently rejected under the
pretext that the position had been eliminated, and that the
position, in substance, was given to Baker and Berlin. (Singh
Aff. ¶¶ 4-6; Singh Dep. at 60-61.)   The defendant disputes that
the plaintiff applied for the SVBS position, and argues that the
OTB never sought applicants for the position because it decided
to eliminate the position upon Coyne's retirement.  Moreover, the
defendant argues that, because it eliminated the position, it did
not seek applicants for the position after the plaintiff was
denied the position, and that Baker and Berlin were appointed to
entirely unrelated positions for which the plaintiff was not
qualified.

     Even if the plaintiff can demonstrate that he applied for
the position of SVBS and that the defendant was seeking

applicants for the position,[1] the plaintiff has offered no
evidence that the defendant continued to seek applicants after
the plaintiff did not receive the position or that the position
was filled by others who were not in the protected class.  The
plaintiff does not dispute that the title of SVBS was eliminated
from the OTB organization chart or budget and that, since Coyne's
retirement, no one has been employed under the title.  The
plaintiff has provided no evidence that would support his
contention that the position remained open in substance and the
OTB continued to seek applicants with the plaintiff's
qualifications.

     The plaintiff's argument that the promotions of Baker and
Berlin demonstrate that they filled the SVBS position is without
merit. The plaintiff alleges that, although Baker and Berlin were
not given SVBS titles, "in reality when examining [their] chores,
tasks and responsibilities… [Baker and Berlin] actually replaced
Coyne in his capacity as SVBS."  (Memorandum of Law in Opposition
to Defendant's Motion for Summary Judgment, filed Oct. 13, 2004
("Opp. Mem.") at 9.)  However, the plaintiff has offered no

---

[1] The defendant argues that the OTB never sought candidates for the position
because no job vacancy was ever announced and the position was not advertised.
In his affidavit, however, the plaintiff alleges that Radice, his supervisor,
told him that the position was open, and that the plaintiff asked to be
considered for it.  (Singh Aff., ¶¶ 6-8.)  The defendant has not disputed this
allegation.  Because the plaintiff cannot establish the fourth element of a
prima facie case for employment discrimination based on failure to promote, it
is unnecessary to decide whether Radice's actions are sufficient to establish
that the plaintiff applied for a position for which the OTB was initially
seeking candidates.

evidence that the positions to which Baker and Berlin were promoted were, in substance, the SVBS position.  The plaintiff points to the alleged fact that they became the plaintiff's supervisors, Singh Aff. ¶ 12, but the plaintiff does not even attempt to compare all of the tasks and responsibilities that Baker and Berlin have as supervisors in the Techinical Control Department to the responsibilities Coyne had as a SVBS.  The plaintiff's conclusory allegations are insufficient to defeat a motion for summary judgment.  See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case"); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Baker v. Lathan Sparrowbush Assocs., 72 F.3d 246, 255 (2d Cir. 1995) (finding that allegation on information and belief without supporting evidence should play no role in summary judgment proceedings).

Moreover, there is significant evidence that the promotions of Baker and Berlin were entirely unrelated to Coyne's retirement and the SVBS vacancy.  Baker and Berlin held and subsequently were promoted to different positions from the ones that the plaintiff and Coyne held, in a different division from that in which the plaintiff and Coyne worked.  (Def. 56.1 ¶¶ 22-34.)  The decisions to promote Baker and Berlin were made as the result of

23

grievances that demonstrated that Baker and Berlin were performing the responsibilities of the positions to which they wished to be promoted over 50% of the time. (Id., ¶¶ 22-34.)

Furthermore, even if the plaintiff had provided evidence that Baker and Berlin were promoted to a position identical in substance to the SVBS position, the timing of the promotions of Baker and Berlin refute an inference of discrimination against the plaintiff. The decision to promote Baker was made in April 2002, six months before Coyne's retirement, and the decision to promote Berlin was made in September 2002, one month before Coyne's retirement. (Id. ¶ 29, 34.) Both decisions were made before the plaintiff alleges that he requested consideration for the position of SVBS in October 2002. (Singh Aff. ¶ 6.) Therefore, there is no basis to conclude that Baker or Berlin filled a vacancy left by Coyne's retirement.

Even if the plaintiff could establish a prima facie case of discriminatory failure to promote, the defendant has put forth a legitimate, nondiscriminatory reason for its decision not to promote the plaintiff. The defendant has demonstrated that its decision not to promote the plaintiff was based upon the fact that it eliminated the position of SVBS because it was no longer necessary. The plaintiff has provided no evidence that the elimination of the SVBS position was mere pretext for discrimination. For the reasons explained above, the plaintiff's

24

argument that the promotions of Baker and Berlin provide evidence that the elimination of the SVBS position was pretext is without merit.  The plaintiff's conclusory allegations that the defendant's stated reasons for the allegedly discriminatory action are pretext for discrimination, without any supporting evidence, cannot defeat a motion for summary judgment.  <u>See Patterson v. County of Oneida</u>, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate"); <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 456 (2d Cir. 1999) (affirming summary judgment dismissing plaintiff's discrimination claims because plaintiff provided no evidence that illegal discriminatory motive played motivating role in decision to deny plaintiff's promotion, and evidence overwhelmingly supported defendant's explanation of legitimate, nondiscriminatory reason); <u>Smith v. American Express Co.</u>, 853 F.2d 151, 154-55 (2d Cir. 1988) (affirming summary judgment because of plaintiff's failure to present more than conclusory allegations that employer's proffered nondiscriminatory rationale for denial of promotion was pretext); <u>see also</u> <u>Kalsi v. New York City Transit Auth.</u>, 62 F.Supp.2d 745, 755-56 (E.D.N.Y. 1998) (dismissing case where plaintiff failed to raise genuine question of fact as to whether legitimate reasons

offered by defendant for discharging plaintiff were pretext for discrimination), aff'd, 189 F.3d 461 (2d Cir. 1999) (TABLE).

Summary judgment is therefore granted dismissing the plaintiff's claim of discriminatory failure to promote.

4.

The defendant argues that summary judgment should be granted dismissing the plaintiff's claim of employment discrimination based on the plaintiff's three-day suspension because the plaintiff cannot establish circumstances that give rise to an inference of discrimination, the fourth element of the McDonnell Douglas prima facie case.

For the purposes of this motion, the defendant does not dispute that the plaintiff is a member of a protected class, that he was qualified for his position, and that the three-day suspension given to the plaintiff in May 2004 was an adverse employment action. The issue is whether the plaintiff can demonstrate that the suspension was given under circumstances that give rise to an inference of discrimination.

The plaintiff has provided no evidence that would show that the suspension was issued because of discrimination based on the plaintiff's race or national origin. The plaintiff stated in his deposition testimony that Mathews, who issued a reprimand for the plaintiff's alleged misconduct on October 15 and 16, 2003, never

discriminated against him (Singh Dep. at 31-35.)  The plaintiff

also has failed to provide any evidence that another employee

guilty of the same disciplinary violations was treated

differently from the plaintiff such that it would give rise to an

inference of discrimination.[2]  The plaintiff's suspicions of

discrimination in the absence of any supporting evidence cannot

defeat a motion for summary judgment.  See Bickerstaff, 196 F.3d

at 456 (finding that plaintiff's feelings and perceptions that

she was being discriminated against were not evidence of

discrimination); Garvin, 2005 WL 957402, at *14 (dismissing claim

where plaintiff failed to provide evidence that discrimination

was motivating factor in defendant's action against plaintiff);

see also Kalsi, 62 F.Supp.2d at 753-54 (dismissing action where

plaintiff provided no evidence suggesting termination motivated

by discriminatory animus).

Moreover, the defendant has proffered a legitimate,

nondiscriminatory reason for the suspension.  The plaintiff

failed to follow a directive to keep the door to the Audio/Visual

---

[2] The plaintiff's allegation in his affidavit that another employee,
Victor Liguori, told the plaintiff that he was not subject to the same
disciplinary actions as the plaintiff for the same behavior is
inadmissible hearsay.  Fed.R.Evid. 801(c), 802.  Hearsay evidence that
would be inadmissible at trial may not be considered on a motion for
summary judgment. Fed.R.Civ.P. 56(e) ("[O]pposing affidavits shall be
made on personal knowledge [and] shall set forth such facts as would be
admissible in evidence...."); see also Burlington Coat Factory
Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985);
Alleyne v. Four Seasons Hotel – New York, 99 Civ. 3432, 2001 WL 135770,
at *12 n.5 (S.D.N.Y. Feb. 15, 2001).

Studio open at all times, and the plaintiff failed to follow departmental operational rules with regard to the broadcast of races. (Def. Mot., Ex. S.) The plaintiff has offered no evidence that these legitimate reasons were mere pretext for discrimination. See Bickerstaff, 196 F.3d 456; Smith, 853 F.2d at 154-55; see also Kalsi, 62 F.Supp.2d at 755-56.

Summary judgment is therefore granted dismissing the plaintiff's claim of discrimination based on the plaintiff's three-day suspension in May 2004.

5.

The defendant argues that summary judgment should be granted dismissing the plaintiff's claim of a hostile work environment because the plaintiff cannot establish a prima facie case for a hostile work environment.

A hostile work environment can constitute an adverse employment action for the purposes of establishing a prima facie case of employment discrimination under Title VII. See Morgan, 536 U.S. at 115-16; Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999). To establish a prima facie case of hostile work environment, a plaintiff must show: (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis

exists for imputing the objectionable conduct to the employer. <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997); <u>see also</u> <u>Garvin</u>, 2005 WL 957402, at *14.  The first element of the prima facie case must be established by a showing that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered."  <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002).

The plaintiff argues that the defendant's failure to promote the plaintiff, the plaintiff's three-day suspension, the plaintiff's unwanted schedule change, and several unwarranted disciplinary measures, in combination, created a hostile work environment.  To support his claim that disciplinary measures contributed to a hostile work environment, the plaintiff refers in his affidavit to being reprimanded unfairly on several occasions, but provides no evidence of specific actions taken on specific dates.  (Singh Aff., ¶¶ 13-17.)  The plaintiff alleges that on one occasion he was "written up for not showing a fifth track listing on the video display screen," which is "clearly a limitation of the video program and not the fault of any employee."  (Singh Aff., ¶ 14.)  The plaintiff does not provide the date of this incident or who reprimanded the plaintiff.  The plaintiff alleges that, on other occasions, he has been reprimanded for exercising his discretion as to which tracks are

displayed on the screen, even though this decision is usually left to his discretion. (Pl. Aff. ¶ 15.) It appears that this allegation refers to the December 10, 2003, incident that was one of the incidents that led to the plaintiff's three-day suspension. (Def. Mot., Ex. S at 4.) The plaintiff also alleges that, "[i]n or around March 2003," the plaintiff received a written reprimand for an act he allegedly performed during a day he was not working. (Pl. Aff. ¶ 17.) The only written reprimand taken against the plaintiff in March 2003, of which the parties have provided evidence is the March 24, 2003 written reprimand, which the defendant alleges, and the plaintiff admits, was taken in response to the plaintiff's failure to display a scheduled racetrack as listed on the simulcast schedule the previous day. (Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.)

These incidents are insufficient to establish the first element of a prima facie case for hostile work environment. The plaintiff has provided no evidence that these incidents were related to his race or national origin, and therefore constituted discriminatory harassment. See Richardson, 180 F.3d at 436 (finding that plaintiff must show that "the workplace was permeated with discriminatory intimidation" to sustain claim for hostile work environment) (emphasis added); Alfano, 294 F.3d at 373. There is no evidence linking any of the alleged actions to the plaintiff's race or national origin. There were no alleged

discriminatory comments by anyone in connection with these
incidents or any evidence of animus based on race or national
origin.

Moreover, the plaintiff does not allege repeated and
continuous incidents, but instead alleges isolated incidents: the
defendant's failure to promote the plaintiff, the plaintiff's
schedule change, two written reprimands – one on March 24, 2003
and another at an unspecified date – and a three-day suspension
in March 2004.[3]  The plaintiff alleges only discrete acts of
allegedly discriminatory treatment, which are insufficient to
sustain a claim of hostile work environment. Kotcher v. Rosa and
Sullivan Supply Ctr., 957 F.2d 59, 62 (2d Cir. 1992) ("The
incidents must be repeated and continuous; isolated acts or
occasional episodes will not merit relief"). Given the limited
number of incidents and their lack of severity, no reasonably
trier of fact could conclude that these incidents created "an
abusive working environment."  See Deters v. Lafuente, 368 F.3d
185, 189 (2d Cir. 2004) (per curiam) (stating that incidents that
are relatively minor and infrequent do not meet standard for
hostile work environment) (citing Philips v. Bowen, 278 F.3d 103,

---

[3] The plaintiff relies upon one written reprimand for which he does not
provide a date and which therefore may have taken place before June 5, 2002.
In his papers opposing the present motion, the plaintiff does not rely on what
appears to be an unrelated written reprimand issued against the plaintiff in
1992.  Even if the plaintiff had relied on the 1992 written reprimand in
addition to all the other incidents upon which the plaintiff does rely, these
incidents are insufficient in number and severity for the plaintiff to
establish a prima facie case of a hostile work environment, for the reasons
explained above.

109 (2d Cir. 2002)); <u>Kotcher</u>, 957 F.2d at 62; <u>see</u> <u>also</u> <u>Garvin</u>,

2005 WL 957402, at *16 (finding that "a handful of situations" in

which plaintiff was reprimanded "did not constitute harassment

sufficiently severe or pervasive to alter the conditions of the

victim's employment, nor [did] it constitute an abusive working

environment as required to create a prima facie case for a

hostile working environment") (internal quotation marks omitted).


C.

To the extent that the plaintiff argues he suffered

retaliation because of his complaints to the OTB and the EEOC,

summary judgment is granted dismissing this claim.[4]

To establish a prima facie case for retaliation under Title

VII, the plaintiff must demonstrate that: (1) he was engaged in a

protected activity; (2) the employer was aware of that activity;

(3) the employer took an adverse employment action against the

plaintiff; and (4) there was a causal connection between the

protected activity and the adverse employment action.  <u>See</u> <u>Sarno</u>

<u>v. Elliman</u>, 183 F.3d 155, 159 (2d Cir. 1999); <u>Tomka v. Seiler</u>

<u>Corp.</u>, 66 F.3d 1295, 1308 (2d Cir. 1995); <u>Garvin</u>, 2005 WL 957402,

---

[4] The plaintiff does not allege retaliation where given the opportunity in his
Amended Complaint.  (<u>See</u> Amd. Compl. at 3.)  Moreover, the Amended Complaint
does not make any allegations of retaliation.  However, the plaintiff appears
to argue that he asserts a claim of retaliation in his Memorandum of
Opposition to Defendant's Motion for Summary Judgment.  (<u>See</u> <u>Opp. Mem.</u> at 8-
9.)

at *17.  Once the plaintiff has established the prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action.  See Tomka, 66 F.3d at 1308; Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991). If the defendant meets its burden of production, the plaintiff has the opportunity to prove that the proffered reason is "merely a pretext for retaliation and that the employer's action was prompted by an impermissible motive."  Tomka, 66 F.3d at 1308.

The plaintiff makes a vague allegation that he suffered retaliation based on his schedule change, the written reprimands that he received, and the three-day suspension that he received in May 2004.  To the extent that the plaintiff's argument is based on the schedule change and written reprimands that he received, the argument is without merit because, for the reasons stated above, these actions do not constitute adverse employment actions.  To the extent that the plaintiff argues that he suffered retaliation in the form of his three-day suspension, it is not clear that the plaintiff has established a prima facie case.  The discipline relating to the October 16, 2003, incident was initiated by Kevin Matthews, who the plaintiff attested did not discriminate against him.

In any event, the plaintiff's claim for retaliation must fail because the defendant has offered a legitimate,

nondiscriminatory reason for the suspension.  As explained above,
the defendant has alleged that the suspension was taken because
the plaintiff failed to follow a directive to keep the door to
the Audio/Visual Studio open at all times, and the plaintiff
failed to follow departmental operational rules with regard to
the broadcast of races.  (Def. Mot., Ex. S.)  The enforcement of
these rules is a legitimate business purpose, and Title VII does
not permit the Court to second guess the non-discriminatory means
an employer selects to achieve a legitimate business purpose.
See Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir.
1988) (in context of claim under Employee Retirement Income
Security Act of 1974).  The plaintiff has offered no evidence
that the legitimate nondiscriminatory reasons the defendant
offers for the suspension – to enforce the OTB employee
directives and operational rules – are merely pretextual and that
a motivating factor was retaliation for the plaintiff's protected
activity.  The plaintiff's conclusory allegations that the
defendant's stated legitimate, nondiscriminatory reason for
issuing the suspension is mere pretext for retaliation are
insufficient to defeat a motion for summary judgment.  See
Patterson, 375 F.3d at 221; Wyatt v. Zuckerman, No. 93 Civ. 8027,
2005 WL 525256, at *13 (S.D.N.Y. Mar. 7, 2005) (dismissing claim

of retaliation where plaintiff offered only conclusory

allegations that defendant's stated reason for adverse actual was

pretextual and that a motivating factor was retaliation for the plaintiff's protected activity. The plaintiff's conclusory allegations that the defendant's stated legitimate, nondiscriminatory reason for issuing the suspension is mere pretext for retaliation are insufficient to defeat a motion for summary judgment. See Patterson, 375 F.3d at 221; Wyatt v. Zuckerman, No. 93 Civ. 8027, 2005 WL 525256, at *13 (S.D.N.Y. Mar. 7, 2005) (dismissing claim of retaliation where plaintiff offered only conclusory allegations that defendant's stated reason for adverse actual was pretext for retaliation). Therefore, the motion for summary judgment is granted dismissing the plaintiff's claim of retaliation.

## CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment dismissing the complaint is granted. The Clerk is directed to enter judgment dismissing the complaint and closing this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **May 27, 2005**

                                                    _G. Koeltl_
                                          **John G. Koeltl**
                                  **United States District Judge**

35